Abraham J. Gellinoff, J.
This action is the latest in a series of taxpayer suits brought to prevent the construction of the controversial Forest Hills housing project (see Cohen v. Lindsay, 57 Misc 2d 840; Forest Hills Residents Assn. v. New York City Housing Auth., N. Y. L. J., Nov. 1, 1971, p. 2, col. 2; Margulis v. Lindsay, 31 N Y 2d 167). As Judge Breitel observed in Margulis (pp. 170-171): “ While the issue in litigation is phrased in technical terms and embraces the arts of statutory interpretation, the issue beneath the issue is whether a public housing project planned for a community may be unshaken from its prior approval and defeated * * * the community having become more articulately aroused and antagonistic to the project in the latter days.”
In this action, the ‘ ‘ issue in litigation ’ ’ is whether defendant Authority failed to obey the competitive biding mandate of section 151,of the Public Housing Law, when it substantially altered the specifications of the construction contract and renegotiated the price of the contract with the original contractor instead of permitting new competitive bidding on the altered contract. In the motion presently before the court, defendants move for summary judgment dismissing the complaint.
There is no serious dispute as to the facts. After the original plans for the project — providing for three 24-story apartment buildings — were judicially ratified in Margulis (supra) the Mayor of the City of New York, reacting to substantial public pressure, commissioned an investigation 1 ‘ to make an independent exploration for possible revisions in the Forest Hills housing project and the overall planning for low-income housing in Queens.” After a two-month effort, during which he heard the views of hundreds of citizens and citizen groups, and dozens of public officials, the investigator, Honorable Mario Matthew Cuomo, issued his report to the Mayor. His major recommendation was that .• 1 ‘ Overall, it is my opinion that the revision in the project should attempt to reduce the number of dwelling units to an acceptable level and should devote them entirely for low income housing purposes. I regard the acceptable level as being approximately 430 units (actually 432) in three buildings each 12 stories high ” (Report of Investigation Concerning Forest Hills Low-Income Housing Project, p. 9).
Mr. Cuomo’s recommendations were accepted by the Mayor who then proposed the revision to the Board of Estimate. The board approved the revision.
*314 Defendant Carlin had previously been awarded the contract to build the project by competitive bidding and had already made progress toward its erection. When the Board of Estimate revision was thus imposed upon defendants, they entered into negotiations and reached agreement as to the changes in price necessitated by the revised specifications based upon a formula contained in the original contract. The building of the project by Carlin, and the other defendants subcontractors, has continued to the present, and substantial progress has been made toward its completion.
Plaintiff claims that the reduction by one half in the size of the project produced a wholly new project, and that the failure to contract for the new project by competitive bidding was unlawful. Defendant Authority, on the other hand, argues that its contract with Carlin provides — as is specifically permitted by subdivision 1 of section 151 of the Public Housing Law: “ that additional work may be done or materials and supplies furnished or that work or materials may be omitted for the purpose of completing such contract in accordance with any changes, omissions or additions in the specifications.” And, echoing Mr. Justice Black’s interpretation of the First Amendment (Smith v. California, 361 U. S. 147, 157 [concurring opn.]), the authority reads the statutory language ‘ ‘ any changes, omissions or additions ’ ’ to mean any changes, omissions or additions.
The court rejects the contention that any change in the specifications, no matter how great, and no matter how motivated, is permitted by subdivision 1 of section 151 of the Public Housing Law. The Authority, however, does have far greater discretionary powers with respect to construction contracts than do other public bodies. For example, other public bodies (see General Municipal Law, § 103; Highway Law, § 38; Public Authorities Law, §§ 1209, 1287; Public Buildings Law, §§ 8, 18; State Finance Law, § 174) may reject the lowest bidder on a construction contract only if that bidder is not “ responsible ” (see Matter of Weeks & Sons, 75 N. Y. St. Dept. Rep. 106), and then, usually only upon consent of the Comptroller. Defendant Authority, on the other hand, as permitted by subdivision 1 of section 151, may, by unanimous vote, accept a bid other than the lowest bid if “ the authority shall deem it to its best interest or necessary or desirable to effectuate the purposes of this chapter or the economy or efficiency in construction and operation of a project ”, Additionally, section 151 is the only statute which gives any public body — the Authority — explicit *315 statutory permission to provide in its contract with a builder for changes and omissions in the specifications.
Manifestly, then, the Legislature has given defendant Authority a degree of freedom from the strict rules of competitive bidding enjoined upon other public bodies. Also, therefore, the cases relied upon by plaintiff (Gerzof v. Sweeney, 16 N Y 2d 206; Fabrizio & Martin v. Board of Educ. Cent. School Dist. No. 2, 290 F. Supp. 945), involving other public bodies, are not apposite.
Too, in the cases relied upon by plaintiff the changes in the specifications followed agreements between the public body and the contractor, either to help the contractor make the lowest bid, or to enable him to keep his costs within the price bid.
In the case at bar, were there the slightest evidence of collusion between the Authority and Carlin, the court, notwithstanding the broad language of section 151 of the Public Housing Law, would deny the instant motion and direct a trial of the issues. There is, however, neither evidence nor allegation of collusion. Indeed, the undisputed facts plainly demonstrate that the changes were mandated upon both the Authority and Carlin, for reasons having nothing whatever to do with the identity of the builder, nor the economics of constructing the project.
Under the unique facts of this case, where the changes were thrust upon, rather than negotiated by, the Authority and the builder, and where the builder had already performed substantial work under the contract at the time of the changes, neither the language of section 151 of the Public Housing Law, nor its intent, requires new competitive bidding for the project, but, rather, permit the Authority and the builder to negotiate a modified contract based upon those changes.
Accordingly, the motion for summary judgment dismissing the complaint is granted. Under the circumstances, the motion by various persons to intervene as parties plaintiff need not be considered, and is denied as moot.